OPINION *Page 2 
{¶ 1} Defendant-Appellant, Steven C. Williams, Jr., appeals the judgment of the Seneca County Court of Common Pleas denying his motion to suppress evidence. On appeal, Williams argues that the trial court erred in denying his motion to suppress because the police lacked probable cause necessary to effectuate a warrantless stop of the vehicle in which he was traveling. Finding that the police possessed probable cause to stop the vehicle, we affirm the judgment of the trial court.
 {¶ 2} In May 2006, Tiffin police officers recovered cocaine from a vehicle driven by Williams.
 {¶ 3} In June 2006, the Seneca County Grand Jury indicted Williams for one count of possession of cocaine in violation of R.C2925.11(A),(C)(4)(c), a felony of the third degree. Subsequently, Williams entered a plea of not guilty.
 {¶ 4} In August 2006, Williams moved to suppress the evidence of cocaine.
 {¶ 5} In October 2006, the trial court held a hearing on Williams' motion to suppress, during which the following testimony was heard.
 {¶ 6} Detective Charles W. Boyer, Unit Commander of the Tiffin Police Department's Seneca Drug Task Force METRICH Enforcement Unit, testified that, in early May 2006, he began a felony drug investigation utilizing a confidential informant; that he had worked with the confidential informant for two years; that the informant had conducted twenty prior drug investigations for him which led to arrests and convictions; *Page 3 
that, on May 1, 2006, this confidential informant contacted him and informed him that Williams was a cocaine dealer from Cincinnati; that Detective Boyer told the informant to order cocaine from Williams and to have Williams transport the cocaine to Tiffin; that he originally arranged an operation for May 1, 2006, during which the police would give Williams directions to a particular location where they would "videotape, uhm, him allegedly cooking up the crack[,] * * *"[1] and then they "were gonna actually do the sale; instead of cocaine it was gonna be crack. And then [they] — the plan was that [they] were gonna, before Mr. Williams left that location that [they] were gonna place him — place him into custody" (hearing tr. p. 19); and, that Detective Boyer cancelled this particular operation because Williams did not come.
 {¶ 7} Further, Detective Boyer testified that, late May 5, 2006, or early May 6, 2006, the informant contacted Detective Boyer and told him that he had arranged to purchase cocaine from Williams; that Williams would be transporting the cocaine from Cincinnati to Tiffin; that Detective Boyer met with the Tiffin Police Department and devised a plan whereby "once [Williams] pulled into an area near the [gas] station, uhm, [they] were gonna make contact with him and at that time, [they] confirmed it was Mr. Williams, that they we're (sic.) gonna conduct a traffic stop on that vehicle" (hearing tr., p. 24); that he instructed the informant to call Williams and give him a particular gas station as a meeting place for the exchange; that he and the informant waited for *Page 4 
Williams inside the same car; that he overheard both ends of the conversations between the informant and Williams; that he overheard Williams tell the informant that he "had the stuff (hearing tr., p. 25); that he overheard Williams ask the informant "if he had the location and the means to be able to cook it up" (hearing tr., p. 25); that he knew Williams was on his way to Tiffin because he overheard him describing landmarks between Findlay and Tiffin to the informant; that he knew there was a passenger in the vehicle because Williams "[explained that another person in the vehicle needed to go to the bathroom" (hearing tr., p. 32); and, that he did not instruct the informant to ask for a description of Williams' vehicle because "if [they] ask too many questions [the suspect is] gonna get — rise to the suspicion that something's up. It's normal practice not to say too much on the phone or give a description of the vehicle." (Hearing Tr., pp. 51-52).
 {¶ 8} Detective Boyer continued that he instructed the informant to call Williams to ask his location; that, while the informant was dialing the phone, he observed a maroon stationwagon "pull into the [gas] station, circle around the small little station real slow * * *" (hearing tr., p. 27); that he overheard the informant ask Williams where he was and heard Williams reply that he was at the [gas] station and ask the informant, "[w]here are you at?" (hearing tr., p. 27); that, simultaneously with hearing this conversation, he "[w]as able to get a view of the driver's side window side of the vehicle. At that point [he] observed, uhm, a black male on the cell phone and [the man] was looking around in *Page 5 
a — like moving his head back and forth as he was saying, `Where are you at?'" (hearing tr., p. 27); that the informant told Williams, "not the first [gas] station, go to the second" (hearing tr., p. 28); that he observed the maroon stationwagon exit the gas station and travel eastbound; that, after making this observation, he contacted the police, told them that "the package has arrived," and informed them of the vehicle's direction and description (hearing tr., p. 31); and, that, based upon his own observations, the information he received from the informant, and the phone conversations he overheard, he ordered the police officers to "take down" the car.
 {¶ 9} On cross-examination, Detective Boyer testified that, when he observed the stationwagon pull into the gas station while the informant was on the phone with Williams, "[I] don't recall exactly when I was telling Uniform Division, when I specifically gave the direction of — I don't know if [the informant] was still dialing when I said, `The vehicle's here," or after [the informant] was on the phone and then, uhm, you know, I explained that the vehicle was there. I have no idea." (Hearing Tr., p. 34). Detective Boyer further testified that he did not give the police the license plate number of the vehicle; that he did not know that the vehicle was from Cincinnati when he ordered the police to stop it; and, that he did not recall if the informant identified Williams while he was at the gas station.
 {¶ 10} Gary McClure, a police officer at the Tiffin Police Department, testified that late May 5, 2006, or early May 6, 2006, Detective Boyer informed the police *Page 6 
department of the drug operation and requested police assistance; that, during the operation, Detective Boyer gave him a description of the vehicle to stop; that he stopped the vehicle based solely on the information he was given by Detective Boyer; that he was not aware that the vehicle was from Cincinnati at the time he stopped the vehicle; that he did not witness any traffic violations giving cause to stop the vehicle; that he did not know Williams was in the vehicle at the time he stopped it; that he did not approach the vehicle and ask its occupants for their names or identification; that he ordered the occupants out of the vehicle at gunpoint; and, that, when he stops a vehicle having prior knowledge that it contains a substantial amount of cocaine, he customarily orders the occupants out of the vehicle at gunpoint.
 {¶ 11} Sergeant Mark E. Marquis, of the Tiffin Police Department, testified that, on the evening of May 5, 2006, Detective Boyer spoke to him about the drug operation; that "it was determined that if Williams did come into town that [the police] should be utilized, uhm, to, uhm, make sure that the vehicle was stopped" (hearing tr., p. 71); that he "stopped the vehicle based on all the information that [he] had been receiving throughout the night, the totality of the circumstances, * * * and based on what [he] had heard from Detective Boyer in observing the vehicle with the driver who could or could not be Mr. Williams * * *" (hearing tr., p. 71); and, that Detective Boyer did not tell him why he believed the maroon stationwagon contained Williams, but informed him that the *Page 7 
suspect was "in the * * * Gas Station, and then [Detective Boyer] advised [them] that [Williams] was leaving the gas station in a maroon stationwagon." (Hearing Tr., p. 72).
 {¶ 12} Sergeant Fred Stevens, of the Tiffin Police Department, testified that he received a radio call instructing him to stop a vehicle, giving him a description of the vehicle, and informing him "that the vehicle was now leaving the [gas station] eastbound on Market Street" (hearing tr., p. 79); that, while initiating the stop, he did not witness any of the police officers ask the driver his name or where he was going; and, that it is not common practice during a "high risk drug" felony traffic stop to ask the subject his name.
 {¶ 13} At the close of the hearing, the trial court overruled Williams' motion to suppress, stating:
 The testimony in this case that has been presented to this Court and the Court is setting — stating its essential findings on the record, pursuant to Criminal Rule 12(E), that Detective Charles Boyer received information from a confidential informant, an informant that he had used since 2004. The confidential informant had been reliable in the past for Officer Boyer and had assisted in approximately 20 other investigations.
 The information from the confidential informant was corroborated by Detective Boyer in a number of ways, including a attempted (sic.) buy or a felony takedown on May 1st, 2006, and all the circumstances relating to that situation.
 As to May 6th, 2006, there are numerous phone conversations between the defendant and the confidential informant. Those phone conversations were overheard, many of them by Officer Boyer, that occurred between the defendant and confidential informant.
 Those conversations indicated that the defendant had the stuff; the defendant had a passenger in the vehicle; that the *Page 8 defendant would be arriving at a prearranged location; there would be an approximate time he would arrive, based upon traveling and passing various landmarks from Cincinnati and especially from Findlay to Tiffin; that the defendant was talking on his cell phone at the prearranged location; was looking around the parking lot trying to locate the confidential informant; and at the request of the confidential informant, the defendant left the prearranged location.
 Based upon these facts that have been proven at this hearing the information that the confidential informant gave to Officer Boyer was corroborated by Officer Boyer; the officers who made the traffic — who made the felony takedown and arrest, being officers McClure, Stevens and Marquis, had under the totality of the circumstances, the right to rely upon Officer Boyer in this matter.
 Therefore, the warrantless felony arrest of the defendant was proper.
(Hearing Tr., pp. 86-87).
 {¶ 14} Thereafter, Williams withdrew his not guilty plea and entered a plea of no contest. Subsequently, the trial court convicted Williams and sentenced him to a five year prison term and ordered him to pay a fine of $5,000.
 {¶ 15} It is from the trial court's October 2006 judgment denying his motion to suppress that Williams appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE POLICE DID NOT HAVE SUFFICIENT PROBABLE CAUSE NECESSARY TO EFFECTUATE THE WARRANTLESS STOP AND "FELONY TAKEDOWN" OF THE SUBJECT VEHICLE AND ITS OCCUPANTS, UNDER THE FACTS AT BAR. *Page 9 
 {¶ 16} In his sole assignment of error, Williams asserts that the trial court erred in denying his motion to suppress evidence because the police did not have sufficient probable cause to effectuate the warrantless stop and "felony takedown" of the vehicle. Specifically, Williams argues that the police did not have sufficient evidence that he was in the stationwagon and that the police lacked probable cause and exceeded the scope of a "Terry" stop when they stopped the vehicle and conducted a "felony takedown" of the vehicle. We disagree.
 {¶ 17} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." State v. Dudli, 3d Dist. No. 3-05-13, 2006-Ohio-601, at ¶ 12, citing United States v.Martinez (11th Circ. 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented.State v. Johnson (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 100, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. The appellate court must then review the application of the law to the facts de novo. Roberts, supra, citing State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
 {¶ 18} The Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither *Page 10 
the Fourth Amendment nor Section 14, Article I explicitly requires that violations of its provisions against unlawful searches and seizures be remedied by suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment.Mapp v. Ohio (1961), 367 U.S. 643, 649. The main rationale of the exclusionary rule is to remove the incentive to violate theFourth Amendment and thereby deter police from unlawful conduct. State v.Jones, 88 Ohio St.3d 430, 435, 2000-Ohio-374, abrogated by State v.Brown, 99 Ohio St.3d 323, 2003-Ohio-3931.
 {¶ 19} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, Xenia v. Wallace (1988),37 Ohio St.3d 216, para. two of syllabus; State v. Kessler (1978),53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. Maumee v. Weisner, 87 Ohio St.3d 295, 297, 1999-Ohio-68, citing 5 LaFave, Search and Seizure (3 Ed. 1996), Section 11.2(b).
 {¶ 20} A warrantless arrest is unconstitutional unless the arresting officer has probable cause to make the arrest at that time. State v.Timson (1974), 38 Ohio St.2d 122. "Probable cause to arrest depends `upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" State v. *Page 11 Miller (1993), 91 Ohio App.3d 270, 273, quoting Beck v. Ohio (1964),379 U.S. 89, 91. In determining the presence of probable cause, a court must examine the "totality of the circumstances." State v. Cromes, 3d Dist. No. 17-06-07, 2006-Ohio-6924, at ¶ 38, citing United States v.Arvizu (2002), 534 U.S. 266.
 {¶ 21} Courts have held that probable cause to arrest did not exist where police received a tip from an informant that a defendant agreed to purchase cocaine from him in Cleveland and the police observed the defendant place an item in the trunk of his car and travel in the general direction of Cleveland, State v. Young, 6th Dist. No. E-04-013,2005-Ohio-3369, and, where informants notified police that the defendant was delivering cocaine in a specific area within a one hour period and police observed the defendant leave his house during the specified time period, State v. Cabell, 6th Dist. No. L-06-1026, 2006-Ohio-4914. Conversely, courts have found that probable cause to arrest existed where an informant notified police that a defendant of a particular description would be delivering cocaine to a specific location, in a specific vehicle, at a specific time; where the police corroborated the tip by obtaining a photograph of the defendant and verifying that he owned the specific vehicle; where the specific vehicle arrived at the specific time and location; and, where the informant, who was present at the time of the arrest, identified the man as the defendant. State v.Hopkins, 6th Dist. No. L-05-1012, 2006-Ohio-967. *Page 12 
 {¶ 22} Where probable cause does not exist, a police officer may nevertheless conduct a "Terry" stop, or investigatory stop, if he has a reasonable suspicion supported by specific and articulable facts that warrant further investigation. See Terry v. Ohio (1968), 392 U.S. 1;Dudli, supra, citing State v. Brandenburg (1987), 41 Ohio App.3d 109,110. "[A] stop founded on reasonable suspicion of criminal activity permits detaining a motorist briefly to request permission to search."State v. Weis, 3d Dist. No. 10-06-22, 2007-Ohio-2279, at ¶ 15, citingState v. Fuller, 3d Dist. Nos. 1-88-1, 1-88-2, 1989 WL 111981.
 {¶ 23} Here, Williams asserts that the police lacked probable cause to stop the stationwagon because Detective Boyer ordered the takedown of the vehicle without first verifying that he was in the vehicle. In support of his argument, Williams points to Detective Boyer's admission on cross-examination that he could not remember when he ordered the vehicle takedown.
 {¶ 24} However, a review of the testimony indicates that Detective Boyer's testimony was not contradictory. Detective Boyer initially testified that he observed the maroon stationwagon enter the gas station; that he saw Williams in the maroon stationwagon looking around while talking on the cellular phone and simultaneously heard him on the phone with the informant saying that he was at the station and asking where the informant was; that the informant told Williams to go to the next gas station; that the maroon stationwagon then exited the gas station; and, that, at that point, he *Page 13 
ordered the vehicle takedown. Then, Detective Boyer testified on cross-examination that he could not remember if he ordered the takedown immediately after observing the vehicle enter the gas station, or after he observed Williams looking around and then exiting the gas station. Although Detective Boyer testified on cross-examination that he could not remember when he ordered the stop, failure to remember does not constitute conflicting or contradictory testimony.
 {¶ 25} Moreover, Williams' argument ignores Sergeant Stevens' and Sergeant Marquis' testimony. Sergeant Stevens testified that, when he received the call ordering him to stop the vehicle, Detective Boyer also informed him of the vehicle's description and that the vehicle was leaving the gas station. Sergeant Marquis testified that, when Detective Boyer ordered him to stop the vehicle, Detective Boyer informed him that the suspect was in a maroon stationwagon that was exiting the gas station. Both Sergeant Stevens' and Sergeant Marquis' testimony corroborates Detective Boyer's direct testimony that he ordered the "takedown" after he observed Williams looking around on his cell phone and then exiting the gas station.
 {¶ 26} We find that this testimony provides competent, credible evidence to support the trial court's finding that Detective Boyer corroborated the informant's information and Williams' identity given that Detective Boyer overheard numerous phone conversations between Williams and the informant where Williams referred to having "the stuff; that the maroon stationwagon arrived at the prearranged location *Page 14 
during the approximate time the sale was scheduled; that there was a passenger in the vehicle; that Detective Boyer observed the man in the maroon stationwagon talking on his cell phone and looking around; that the informant then told Williams to go to the next gas station; and, that the vehicle then exited the gas station.
 {¶ 27} These facts and circumstances constituted sufficient information to warrant the police in believing that the man in the stationwagon was Williams and that he was committing an offense, giving them sufficient probable cause to "takedown" the vehicle and arrest Williams.
 {¶ 28} Additionally, Williams argues that the police exceeded the scope of a "Terry" stop. However, based on our finding that the police had probable cause for the warrantless stop of the vehicle, we find that Williams' "Terry" argument is irrelevant.
 {¶ 29} Accordingly, we overrule Williams' assignment of error.
 {¶ 30} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] "Cooking up" refers to the process by which cocaine is converted into crack cocaine. Detective Boyer explained that Williams normally transported cocaine, not crack cocaine, because the penalty for cocaine possession was less than the penalty for crack cocaine possession. *Page 1