{¶ 1} Joseph Hoke appeals from his conviction in the Champaign County Common Pleas Court of possession of a controlled substance, to-wit, Alprazolam, pursuant to his no-contest plea. The facts underlying this appeal are not essentially in dispute and are set out in the State's brief as follows: *Page 2 
 {¶ 2} Shortly after 3:00 a.m. on May, 10, 2006, the Urbana Police Division received a report of a suspicious person wearing a hooded sweatshirt inside the Speedway located at 725 North Main Street. Dispatch contacted the store clerk, who confirmed the individual's presence near the store's beer coolers. The coolers were locked at the time since the store was not permitted to sell beer after 1:00. The suspicious person, subsequently identified as Hoke, broke the lock on a cooler and stole some beer. Id. at p. 7.
 {¶ 3} Sergeant Dave Reese, a patrol supervisor with the Urbana Police Division, and Officer Kip Michael were dispatched to the Speedway. Hoke was met by Sergeant Reese as he left the store. Reese asked Hoke what he was hiding under his sweatshirt. Hoke lifted up his sweatshirt and pulled out the beer he had stolen from the cooler. Id. Hoke kept reaching into his pocket, which prompted Sergeant Reese to pat him down. Id. at p. 16. Sergeant Reese found a plastic baggie containing marijuana and a pill bottle containing one and one-half tablets of Alprazolam during the pat down. Id. at pp. 16-17.
 {¶ 4} Hoke initially denied driving a pickup truck to the Speedway. He changed his story after Sergeant Reese pointed to the security camera located on the corner of the store. Sergeant Reese also noticed a strong odor of alcohol on Hoke's breath. Hoke was confused and had difficulty talking. Id. Sergeant Reese instructed Officer Robbie Evans, who had just arrived at the scene, to conduct a field sobriety test. Id. at p. 17. Hoke was arrested for DUI after he failed the test. Id.
 {¶ 5} While Sergeant Reese was busy with Hoke, Officer Kip Michael approached his passenger, Billy Evans, who was standing near the pickup truck. Id. at *Page 3 
pp. 12-13. Billy Evans was extremely intoxicated and there was a wet spot on the front of his pants where he had soiled himself. Id. at pp. 15-16. The officers decided to impound the pickup truck after arresting Hoke for DUI. Id. at p. 18. Consistent with standard department policy, the officers inventoried the truck prior to having it towed. Id. A pill bottle containing Alprazolam was found in the driver's side door. Id. at pp. 18-19. Beer containers were also found in the truck.
 {¶ 6} Subsequently, the officers were not able to find a ride for the intoxicated Billy Evans. Id. at p. 19. Nor could they send him to Tri-County Regional Jail, which does not take prisoners on a six-hour hold for public intoxication. Id. The officers asked Billy Evans if he thought the truck's owner would give him a ride home. Id. Billy Evans answered in the affirmative. The officers contacted the truck's owner, the Appellant's father, who agreed to take Billy Evans home. The owner came to the Speedway, retrieved the truck, and took Billy Evans with him. Id.
 {¶ 7} Hoke moved to suppress the drugs recovered from his vehicle, contending the search was not proper under the search incident exception nor the automobile exception. The trial court overruled the motion and found the search was properly conducted as a search incident to Hoke's arrest, and was proper as an automobile inventory search. The court also found the facts established that the vehicle was to be used in illegal activity, and such use was imminent.
 {¶ 8} Hoke contends in his sole assignment that the trial court erred in overruling his motion to suppress. Hoke contends the police could not justify the search of his car as an inventory search because his car was never impounded and, in fact, was later driven away by his father. Hoke contends the inventory justification for the search of his *Page 4 
car was a pretext to conduct an unlawful search of his car. Secondly, Hoke argues the search of his car by the police cannot be justified as a search incident to his arrest because he was not driving the car when the police observed him, nor was he stopped immediately after alighting from his car. Lastly, Hoke argues the search of his car cannot be justified under the automobile exception because the police did not have probable cause to search his car for evidence of a crime.
 {¶ 9} The State argues the search of Hoke's truck was reasonable because the police had ample reason to believe Hoke's truck had been used or was going to be used to commit a crime. The State also argues the police conducted a proper inventory search because at the time the inventory search was conducted, the police believed no one could drive the truck away safely, and the Appellant was under arrest. The State argues there is no requirement that the inventory search be conducted prior to the towing of the vehicle, and Sergeant Reese testified that it was standard practice of the Urbana Police Division to inventory a vehicle before towing.
 {¶ 10} The police could reasonably search Hoke's truck pursuant to the inventory exception to the warrant requirement. In South Dakota v.Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, the Supreme Court held that automobile inventory searches are reasonable when performed pursuant to a standardized policy, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle. In Colorado v.Bertine (1987), 479 U.S. 397, 107 S.Ct. 738, 93 L.Ed.2d 739, the police inventoried the defendant's vehicle before the arrival of the tow truck. The court noted inventory procedures serve (1) to protect the owner's property while in police custody, (2) to ensure against claims of lost, *Page 5 
stolen, or vandalized property, and (3) to guard the police from danger. In light of these purposes, the court noted the exact location of the inventory search is not critical to effectuating these purposes, and therefore a search prior to impoundment may be reasonable. See alsoState v. Peagler (1996), 76 Ohio St.3d 496 at 501.
 {¶ 11} Sergeant Reese testified he initially decided he was going to have Hoke's truck towed because Hoke was under arrest and his passenger, Evans, was in no condition to drive the vehicle away. Reese said he then searched the vehicle pursuant to his department's inventory policy and discovered the drugs and alcohol. Reese testified it was only after it was determined that the tri-county jail would not hold Evans for the mandatory six-hour period that he asked Evans if he thought the owner of the truck, Hoke's father, might take him home. When Evans replied he thought Hoke's father would take him home, the police later released the truck to Hoke's father for that purpose.
 {¶ 12} We agree with the State that the mere fact that the police ultimately released the truck to the defendant's father does not mean the earlier inventory search was not justified. The trial court properly found that the inventory search was an additional justification for the search of Hoke's truck. We agree with the trial court that the search of the vehicle was reasonable under the Fourth Amendment, and the trial court properly denied Hoke's motion to suppress. The assignment of error is Overruled.
 {¶ 13} The judgment of the trial court is Affirmed.
 Wolff, P.J., and Grady, J., concur. *Page 1