[Cite as *State v. Perkins*, 2019-Ohio-2049.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                    Court of Appeals No. S-18-010

      Appellee                              Trial Court No. 17CR524

v.

Daren M. Perkins                         **DECISION AND JUDGMENT**

      Appellant                            Decided:  May 24, 2019

* * * * *

Timothy Braun, Sandusky County Prosecuting Attorney, and
Mark E. Mulligan, Assistant Prosecuting Attorney, for appellee.

James H. Ellis III, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Daren M. Perkins, appeals the December 13, 2017

judgment of the Sandusky County Court of Common Pleas, convicting him of illegal

possession of chemicals for manufacture of drugs and sentencing him to a prison term of

36 months.  For the reasons that follow, we affirm.

## I. Background

{¶ 2} On May 13, 2017, Officer Jeffrey Bauer, of the Clyde Police Department, observed Daren Perkins operating a motor vehicle. Officer Bauer knew Perkins and was aware that his driver's license was suspended, so he initiated a traffic stop. He issued Perkins a citation and told him that he would not be able to drive the vehicle to another location. Perkins asked if he could bring another licensed driver to the location to drive the vehicle, and Officer Bauer told him that he could. Perkins did not have a phone, so he left on foot to find someone.

{¶ 3} While Perkins was away trying to find another licensed driver, dispatch called a tow company to remove the vehicle from the roadway. Officer Bauer, and other officers who were on the scene to assist him, began an inventory search of the vehicle. During that search, they discovered items that made them suspect that the vehicle was being used as a rolling methamphetamine lab: a plastic Orange Crush bottle with white residue, a plastic Mountain Dew bottle with white residue and a coffee filter twisted up inside, and a clear plastic bottle with sludge material. They enlisted the help of Special Agent Andrew Webb of the Ohio Bureau of Criminal Investigation's ("BCI") clandestine drug lab and marijuana suppression unit.

{¶ 4} BCI tested the items found in the vehicle. The Mountain Dew bottle tested positive for the presence of hydrogen chloride acid, and the clear plastic bottle containing sludge material was consistent with the chemical waste produced when manufacturing methamphetamine and tested positive for the presence of ammonia gas. There was also

2.

evidence of lithium extracted from a lithium battery. While meth itself was not found in the vehicle, the combination of these items and the presence of these chemicals confirmed for investigators their suspicions that meth was being produced in the vehicle.

{¶ 5} Perkins was charged with illegal possession of chemicals for the manufacture of drugs, a violation of R.C. 2925.041(A). Following a jury trial—at which Perkins represented himself with a lawyer present for consultation—Perkins was convicted. He was immediately sentenced to a prison term of 36 months. He appealed and assigns the following errors for our review:

> A. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

> B. THE TRIAL COURT ERRED BY FAILING TO COMPLY WITH APPLICABLE STATUTES IN SENTENCING THE APPELLANT.

## II. Law and Analysis

{¶ 6} In his first assignment of error, Perkins argues that trial counsel was ineffective for failing to file a motion to suppress evidence collected during the inventory search of his vehicle. In his second assignment of error, he argues that the trial court failed to comply with applicable sentencing statutes because it neglected to consider R.C. 2929.11 and 2929.12 in fashioning his sentence. We consider each of these assignments in turn.

3.

## A. Ineffective Assistance of Counsel

{¶ 7} Officer Bauer told Perkins that he could bring a licensed driver to the scene to drive his vehicle to another location. Nevertheless, while Perkins was in the process of looking for someone to drive his car, a tow truck was summoned, leading officers to conduct an inventory search of the vehicle. It was during this search that the incriminating items were discovered. Perkins complains that there was no additional criminal activity justifying a search of the vehicle, there was no reason to impound the vehicle given that it was anticipated that he would be returning with a licensed driver, and the vehicle was not, in fact, impounded. He, therefore, claims in his first assignment of error that trial counsel was ineffective for failing to file a motion to suppress the evidence discovered during the inventory search.

{¶ 8} In response, the state argues only that Perkins's ineffective-assistance claim fails because he represented himself at trial. It acknowledges that Perkins was appointed an attorney on May 15, 2017, a second attorney on June 29, 2017, and a third attorney on October 10, 2017, but it maintains that Perkins's third attorney acted merely in a "standby capacity" at trial while Perkins represented himself.

{¶ 9} In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287, 661 N.E.2d 817 (7th Dist.1995). To establish ineffective assistance of counsel, an appellant must show

4.

"(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 10} "The 'failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel.'" *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 94, quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Rather, the ordinary two-part *Strickland* analysis applies, requiring an appellant to prove both that there was a basis to suppress the evidence in question and that there was a reasonable probability that the result of the proceeding would have been different had the evidence been suppressed. *Id. See also State v. Carter*, 2017-Ohio-7501, 96 N.E.3d 1046, ¶ 78 (7th Dist.) (recognizing that where a defendant claims error in trial counsel's failure to file suppression motion, he or she must prove that there was valid ground to suppress the evidence and that there is a reasonable probability that the result of the trial would have been different had the evidence been suppressed).

{¶ 11} "A claim of ineffective assistance of counsel in a direct appeal must be established by the evidence in the record." *Carter* at ¶ 78. "[I]f establishing ineffective

5.

assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal." *Id.,* citing *State v. Hartman*, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150 (2001).

**{¶ 12}** We first address the state's argument that Perkins cannot prevail on his ineffective-assistance claim because he represented himself at trial. Under Crim.R. 12(D), a motion to suppress evidence must be filed "within thirty-five days after arraignment or seven days before trial, whichever is earlier." Although Perkins ultimately decided to represent himself at his December 12, 2017 trial, he was represented by counsel at his arraignment and during the 35 days that followed. We, therefore, reject the state's contention that Perkins's ineffective-assistance claim fails merely because he chose to represent himself at trial.

**{¶ 13}** However, we find that Perkins's ineffective-assistance claim fails nonetheless because Perkins has failed to demonstrate by the evidence in the record that there was a basis to suppress the evidence in question. We reach this conclusion based on (1) the absence in the record of any evidence from which we may conclude that the vehicle was towed contrary to standard police practice or that the decision to tow was a mere pretext to perform an evidentiary search; and (2) Perkins's failure to cite any facts or law binding Officer Bauer to his initial inclination to allow him to search for a licensed driver.

**{¶ 14}** First, for Fourth Amendment purposes, Ohio cases "treat the action of lawfully towing a defendant's vehicle at the direction and control of a police officer upon

6.

an arrest of the vehicle's sole occupant as equivalent to * * * impoundment." *State v. Calvin*, 3d Dist. Hancock No. 5-15-17, 2015-Ohio-4801, ¶ 18. The Ohio Supreme Court has recognized that "a routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile." *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979). *See also State v. Gordon,* 96 Ohio App.3d 334, 340, 642 N.E.2d 440 (8th Dist.1994).

{¶ 15} Here, Officer Bauer testified at trial that (1) his department maintains a standard operating procedure prohibiting him from leaving a vehicle in the roadway, and (2) there were no licensed drivers present who could remove Perkins's vehicle from the roadway. In addition to Officer Bauer's testimony, our review of the Clyde Municipal Ordinances reveals that under Section 303.08(a)(9), "[p]olice officers are authorized to provide for the removal of a vehicle * * * [w]hen any vehicle has been operated by any person who is driving without a lawful license or while his license has been suspended or revoked and is located upon a public street or other property open to the public for purposes of vehicular travel or parking." Absent evidence in the record demonstrating that the decision to tow was contrary to policy for some reason or that the procedure was pretextual, we cannot say that there was a basis to suppress the evidence discovered during the inventory search.

7.

{¶ 16} Second, we acknowledge that Officer Bauer initially told Perkins that he could try to find a licensed driver, but ultimately decided to have the vehicle towed anyway. But Perkins has cited no legal authority suggesting that Officer Bauer was bound by his initial inclination to allow him to find another licensed driver. *See State v. Hoke*, 2d Dist. Champaign No. 07-CA-01, 2008-Ohio-757, ¶ 12 (upholding inventory search where officers initially decided to tow vehicle, but then decided to allow appellant's father to pick it up). *See also City of Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 19 (rejecting defendant's argument that he could have been permitted to call a tow truck himself as an alternative to impoundment, reasoning that while it may have been possible to allow defendant to make other arrangements, the reasonableness of a particular governmental activity does not necessarily turn on the availability of such alternative means).

{¶ 17} Additionally, the record before us includes no facts that may be said to have precluded Officer Bauer from reversing course here. For instance, there is no evidence in the record indicating that Perkins promptly returned to the scene with a licensed driver. Nor do we have before us any other evidence pertinent to Officer Bauer's ultimate decision to tow the vehicle instead of allowing Perkins to arrange for its removal from the roadway, such as information as to when the tow truck was called in relation to when Perkins left the site of the traffic stop, how long Perkins was gone, how far he expected to have to travel to find a licensed driver, or whether he had a particular

8.

licensed driver in mind. As such, Perkins has failed to cite any facts that might bind Officer Bauer to his initial inclination to allow him to search for a licensed driver.

{¶ 18} Because Perkins has failed to demonstrate by evidence in the record that there was a basis to suppress the evidence discovered during the inventory search of his vehicle, he cannot prevail on his claim that counsel was ineffective for failing to move to suppress the evidence. We find Perkins's first assignment of error not well-taken.

### B. Failure to Comply with Sentencing Statutes

{¶ 19} In his second assignment of error, Perkins argues that the trial court failed to consider R.C. 2929.11 and 2929.12 in fashioning his 36-month prison sentence. He claims that the court's failure to consider these statutes is apparent given that (1) it sentenced Perkins within minutes of the jury announcing its verdict, and (2) it made no mention of these provisions at sentencing or in the judgment entry.

{¶ 20} We review felony sentences under R.C. 2953.08(G)(2). Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶ 21}** The Supreme Court of Ohio in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18, held that a sentence is not clearly and convincingly contrary to law where the trial court has considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the statutory range. Perkins's challenge here relates only to the court's purported failure to consider R.C. 2929.11 and 2929.12.

**{¶ 22}** Perkins correctly points out that the trial court did not specifically indicate either at sentencing or in its judgment entry that it considered these statutes. But it is well-recognized that where the record is silent, there is a presumption that the trial court gave proper consideration to R.C. 2929.11 and 2929.12. *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d 1361 (1988); *State v. Rutherford*, 2d Dist. Champaign No. 08CA11, 2009-Ohio-2071, ¶ 34-35. *See also State v. Seele*, 6th Dist. Sandusky No. S-13-025, 2014-Ohio-1455, ¶ 19 ("While it is true that the trial court did not expressly state in either its judgment entry or during the sentencing hearing that it had balanced the principles and purposes of sentencing against the seriousness of the offense and the likelihood of recidivism under R.C. 2929.11 and 2929.12, we must presume that the trial court gave those statutes proper consideration."). It is up to the defendant to rebut this presumption. *Rutherford* at ¶ 34-35. "Thus, the issue before us is whether the record demonstrates that the trial court considered R.C. 2929.11 and 2929.12 in imposing its sentence, not whether

10.

the trial court expressly indicated that it did so." *State v. Sims*, 6th Dist. Sandusky No. S-13-037, 2014-Ohio-3515, ¶ 10.

{¶ 23} R.C. 2929.11 explains that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." It instructs that "[t]o achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

{¶ 24} R.C. 2929.12 provides discretion to the trial court "to determine the most effective way to comply with the purposes and principles of sentencing * * *." It requires that "[i]n exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) * * * relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) * * * relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) * * * pertaining to the offender's service in the armed forces of the United States," in addition to any other factors relevant to achieving the purposes and principles of sentencing. R.C. 2929.12(A).

{¶ 25} Here, the state told the court that Perkins has prior convictions, has served prison time, has been convicted of violent offenses, and has now been shown to have participated in the manufacture of drugs. It requested a prison sentence of 24 months.

11.

Perkins emphasized at sentencing that he had never before been charged with a drug offense, and he requested community control. He tried to persuade the court that he would benefit from being placed in a halfway house or rehab facility.

{¶ 26} After hearing from the state and from Perkins, the trial court imposed the maximum prison sentence—36 months. It provided the following rationale for doing so:

I – you – you take me for a fool for some reason. I don't understand it. I am particularly offended by the fact that you were, first, operating this vehicle without driving privileges; you were driving under suspension. Clearly, there's an odor associated with this stuff. To expect a jury or – or me to conclude that somebody planted it there without your knowledge, it's – it – it doesn't – doesn't fly.

With the plague going on in Sandusky County with drugs, we don't need people manufacturing meth and making it worse.

{¶ 27} The sentencing judge—who heard the evidence at trial—had before him information indicating that Perkins had a criminal record and had, in fact, committed the additional crime of operating a motor vehicle while under suspension. Moreover, the court clearly placed great significance in the fact that Perkins was contributing to an already-rampant drug problem in the county. "[I]t is up to the discretion of the individual decision-maker 'to determine the weight to assign a particular statutory factor.'" *State v. Yeager*, 6th Dist. Sandusky No. S-15-025, 2016-Ohio-4759, ¶ 13, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). Here, the court may have weighed

certain factors more heavily than others, but we cannot say that it did not consider the principles and purposes of sentencing or the seriousness and recidivism factors as it was required to do under R.C. 2929.11 and 2929.12.

{¶ 28} Accordingly, we find Perkins's second assignment of error not well-taken.

### III. Conclusion

{¶ 29} Perkins has cited nothing in the record providing a basis for suppressing the evidence discovered during the inventory search of his vehicle, therefore, Perkins's ineffective-assistance claim fails and his first assignment of error is not well-taken. Additionally, Perkins has failed to rebut the presumption that the trial court considered R.C. 2929.11 and 2929.12 in fashioning his sentence, thus his second assignment of error is also not well-taken. We affirm the December 13, 2017 judgment of the Sandusky County Court of Common Pleas. Perkins is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                            _____
                                                             JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.                               _____
CONCUR.                                                           JUDGE

                                                              _____
                                                             JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.