THE CITY OF BLUE ASH, APPELLANT, *v.* KAVANAGH, APPELLEE.

[Cite as *Blue Ash v. Kavanagh,*
113 Ohio St.3d 67, 2007-Ohio-1103.]

(No. 2005–2149—Submitted November 28, 2006—Decided March 28, 2007.)

LUNDBERG STRATTON, J.

## I. Introduction

{¶ 1} Today this court must determine whether discretionary impoundment of a vehicle during a legitimate traffic stop constitutes an unreasonable seizure under the Fourth Amendment. For the reasons that follow, we find that the impoundment was justified and that the detention of the driver and subsequent search of the vehicle were lawful, and we therefore reverse the judgment of the court of appeals.

## II. Facts

{¶ 2} On January 15, 2004, Blue Ash Police Officer Robert Rockel pulled over defendant-appellee, William Kavanagh, on Interstate 71 for driving with expired license plates. When asked for his driver's license, defendant produced an expired driver's license. Officer Rockel noticed that defendant appeared to be nervous, his voice trembled, and his hands were shaky.

{¶ 3} Because defendant's operator's license and tags had both been expired for almost three months and defendant could not lawfully drive the vehicle away, and the vehicle could not be parked or pushed to a safe location on the highway, Officer Rockel decided to impound defendant's vehicle. Officer Rockel testified that with regard to a driver with an expired driver's license and license plates, Blue Ash Police Department policy is to leave the decision whether to impound the vehicle to the officer's discretion.

{¶ 4} After speaking to defendant, Officer Rockel went back to his cruiser, requested backup, and began writing a citation. Officer Rockel then returned to defendant and asked him to step out of his vehicle for the officer's safety and because the vehicle was being impounded. Officer Rockel also asked defendant if there was any marijuana in the vehicle. In Officer Rockel's opinion, the question

seemed to make defendant more nervous, but defendant answered in the negative. Around that time, Officer Beth Monteith arrived as backup.

{¶ 5} Officer Rockel asked defendant to stand with Officer Monteith between his cruiser and defendant's vehicle for safety. Officer Rockel then decided to deploy his narcotics-detection dog, which was in his cruiser. The dog alerted to the driver's side and passenger's side door handles of defendant's vehicle. Because of the positive alert by the dog, Officer Rockel decided that he would search the vehicle. Before Officer Rockel could open defendant's car door to begin the search, defendant informed Officer Monteith that there was a gun in the center console. On that information, Officer Rockel retrieved the loaded 9 mm weapon from the vehicle's console.[1]

{¶ 6} Defendant was cited for the traffic violations[2] and was placed under arrest for improperly handling a firearm in a motor vehicle in violation of Blue Ash Codified Ordinances 549.04, a first-degree misdemeanor. Defendant sought to have the results of the search suppressed. After a hearing, the trial court denied the motion to suppress. Defendant pleaded no contest to the firearm charge and was found guilty by the trial court.

{¶ 7} Defendant appealed his firearm conviction and the trial court's denial of his motion to suppress. The Hamilton County Court of Appeals reversed the judgment of the trial court and remanded the cause. The cause is now before this court pursuant to the acceptance of a discretionary appeal.

## III. Analysis

{¶ 8} In reversing the trial court's judgment denying the motion to suppress, the court of appeals held that defendant "was unlawfully detained at the time the search began because the traffic stop had ended when Rockel finished citing him for the license and registration violations. * * * Once the justification for the traffic stop had ended, Rockel was not permitted to extend the stop for [the] purpose of using the dog to detect narcotics."

{¶ 9} The court rejected the city's argument that because Officer Rockel had decided to impound the car, the traffic stop was not over. The court reasoned that but for the officer's decision not to permit defendant to drive the car, the car would not have been parked illegally or obstructing traffic, and impoundment would not have been necessary. The court concluded that the improper exten-

---

1. Although drugs were not ultimately found in the vehicle, the defendant later informed Officer Rockel that his friends regularly smoke marijuana and that that could have been the odor in the vehicle that the dog detected.

2. It is unclear from the record whether defendant was cited for driving with expired tags in violation of R.C. 4503.21 or operating without a valid license in violation of R.C. 4510.12, or both.

sion of defendant's detention invalidated everything that occurred beyond the time of the unlawful traffic stop, including the canine sniff and the discovery of the firearm. We disagree.

## A. Impoundment

{¶ 10} The parties agree that defendant was lawfully stopped. The question is whether the lawful detention for the traffic infractions became an unlawful detention when the officer decided to impound the vehicle and deploy the narcotics-detection dog. We hold that it did not.

{¶ 11} While focusing primarily on inventory searches rather than impound-ment, *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, is instructive. The United States Supreme Court concluded that a routine inventory search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle. The court held that "[i]n the interests of public safety and as part of what the Court has called 'community caretaking functions,' * * * automobiles are frequently taken into police custody. * * * The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Id. at 368–369, 96 S.Ct. 3092, 49 L.Ed.2d 1000, quoting *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706. See, also, *State v. Robinson* (1979), 58 Ohio St.2d 478, 480, 12 O.O.3d 394, 391 N.E.2d 317.

{¶ 12} Thus, we must determine whether the vehicle was lawfully impounded and whether the impoundment was merely a pretext for an evidentiary search of the impounded vehicle.

{¶ 13} R.C. 4513.61 provides that "[t]he sheriff of a county or chief of police * * * or a state highway patrol trooper * * * may order into storage any motor vehicle * * * that has come into possession of the sheriff, chief of police, or state highway patrol trooper as a result of the performance of the [officer's] duties or that has been left on a public street or other property open to the public for purposes of vehicular travel * * *."

{¶ 14} Further, Blue Ash Code of Ordinances 303.08 also addresses impound-ing of vehicles:

{¶ 15} "(a) Whenever any police officer finds a vehicle unattended upon any highway * * * where such vehicle constitutes an obstruction to traffic, such officer may provide for the removal of such vehicle to the nearest garage or other place of safety. In addition to the above, any police officer may impound any

stolen, abandoned or unroadworthy vehicle, or any other vehicle parked at a place where parking is prohibited * * *."

{¶ 16} Thus, under both R.C. 4513.61 and Blue Ash Code 303.08, Officer Rockel was expressly authorized to use his discretion whether to impound the vehicle.

### B. Pretext

{¶ 17} Next we must determine whether the impoundment was merely a pretext for an evidentiary search of the impounded vehicle. In *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739, contraband was seized from inside a defendant's backpack during an inventory search of his impounded vehicle. In upholding the search, the court held that "there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation." Id. at 372, 107 S.Ct. 738, 93 L.Ed.2d 739.

{¶ 18} Defendant points to *Bertine* as barring what occurred in this case; specifically, defendant argues that Officer Rockel was not following "standardized procedures," because the officer conceded that the decision in this instance whether to impound was discretionary. However, *Bertine* requires standardized procedures with regard to inventory searches, not impoundment.

{¶ 19} Defendant argues that he could have been permitted to call a tow truck himself as an alternative to impoundment. The *Bertine* court observed that although giving the defendant in that case an opportunity to make alternative arrangements for his vehicle would have been possible, " '[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' " Id. at 373–374, 107 S.Ct. 738, 93 L.Ed.2d 739, quoting *Illinois v. Lafayette* (1983), 462 U.S. 640, 647, 103 S.Ct. 2605, 77 L.Ed.2d 65.

{¶ 20} Thus, we conclude that the impoundment in this case was not merely a pretext for an evidentiary search of the impounded vehicle.

### C. Search

{¶ 21} Having determined that the impoundment was lawful, we turn to whether the decision to deploy the narcotics-detection dog extended a lawful detention into a detention that violated the Fourth Amendment.

{¶ 22} The United States Supreme Court has held that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.' " *United States v. Jacobsen* (1984), 466 U.S. 109, 124, 104 S.Ct. 1652, 80 L.Ed.2d 85. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can

become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes* (2005), 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842.

{¶ 23} In *Caballes,* an officer stopped the defendant for speeding on an interstate highway, and while one officer wrote a ticket, another officer arrived and walked a narcotics-detection dog around the defendant's car. The dog alerted on the trunk of the car, and based on that alert, officers searched the trunk, found marijuana, and arrested the defendant. The court upheld the constitutionality of deploying the narcotics-detection dog.

{¶ 24} We find that the deployment of the narcotics-detection dog in this case did not prolong the seizure beyond the time reasonably required to complete the original mission of citing the defendant for driving with expired license plates.

{¶ 25} As the trial court noted, Officer Rockel testified that he had decided before he issued the citation that he was going to have the car towed because it could not be lawfully operated on the street. This decision was based on the fact that defendant could not lawfully operate *any* vehicle because his driver's license had been expired for nearly three months and the vehicle itself could not be legally driven by *any* driver because the license plates had been expired for nearly three months. Moreover, the vehicle could not safely be allowed to remain on Interstate 71, where defendant was stopped.

{¶ 26} Most important, the trial court correctly noted that there still would have been time for the narcotics-detection dog to be deployed had defendant been permitted to call a tow truck himself. When the dog alerted to the vehicle's door handles, it gave Officer Rockel probable cause to search the vehicle. Therefore, we conclude that the search was lawful.

{¶ 27} Defendant argues that this search violates *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762. We disagree. In *Robinette,* we held that "[w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when the continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." Id., paragraph one of the syllabus.

{¶ 28} First, defendant's detention after the narcotics-detection dog alerted, establishing probable cause to search defendant's car, was lawful and related to the purpose of the original stop. Defendant was stopped for driving a car with expired tags. At the time the narcotics-detection dog alerted on his car, defendant was awaiting a tow truck to impound the car, which, due to the expired tags, could not legally be driven away.

{¶ 29} Second, in *Robinette*, the defendant was stopped for speeding. He could have legally driven away after he was handed the citation. Here, defendant was stopped for expired tags and could not legally drive away. Therefore, the search at issue in this case did not violate *Robinette*.

## IV. Conclusion

{¶ 30} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. We agree with the trial court's assessments and hold that Officer Rockel lawfully impounded defendant's vehicle during a lawful traffic stop, and the deployment of the narcotics-detection dog while awaiting impoundment did not prolong the seizure beyond the time reasonably required to complete the citation. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

Judgment reversed
and cause remanded.

Moyer, C.J., Carr and O'Connor, JJ., concur.

O'Donnell and Lanzinger, JJ., would dismiss the appeal as having been improvidently accepted.

Pfeifer, J., dissents.

Donna J. Carr, J., of the Ninth Appellate District, was assigned to sit for Resnick, J., whose term ended on January 1, 2007.

Cupp, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———————

**Pfeifer, J., dissenting.**

{¶ 31} As a preliminary matter, this case should be dismissed as having been improvidently accepted. It is so fact-specific, involving a possible stall for time to allow backup to arrive so a drug-sniffing dog could be deployed, that it does not qualify as a case of "public or great general interest." Section 2(B)(2)(e), Article IV of the Ohio Constitution. Because of its fact-specific nature, the majority opinion is unlikely to provide meaningful guidance to the bench and bar.

{¶ 32} In a simpler time, a person who forgot to renew his license or registration was given a warning and expected to renew the license or registration as soon as possible. But now, this court would have the state treat forgetful

people as hardened criminals. Instead of citing people who forget to renew licenses and registrations and having them pay a fine as a consequence of their forgetfulness, today this court sanctions the impoundment of every car whose registration is out of date and sanctions forcing every person—the elderly, mothers with young children, etc.—to find alternative means to his or her destination, if his or her license has not been timely renewed. It is, of course, absurd. Sadly, there is no other way to read the majority opinion.

{¶ 33} Such a draconian policy might make sense when dealing with a person whose license was suspended, especially if the license was suspended for drunk driving or other heinous conduct. But driving with expired tags in violation of R.C. 4503.21 and operating without a valid license in violation of R.C. 4510.12, the possible violations in this case, are minor misdemeanors. Still, according to the majority opinion, these violations are enough to justify a police officer to request backup and deploy a drug-sniffing dog. Many more opinions like this and we will be living in a full-fledged police state. I dissent.

---

David P. Fornshell, Blue Ash Prosecuting Attorney, and Sarah V. Lewis, Assistant Prosecuting Attorney, and Mark A. Vander Laan, City Solicitor, for appellant.

Gerhardstein, Branch & Laufman and Paul M. Laufman, for appellee.