[Cite as *State v. Neal*, 2012-Ohio-2609.]

STATE OF OHIO )  IN THE COURT OF APPEALS
)ss:  NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO

    Appellee

v.

BILLY J. NEAL

    Appellant

C.A. No.    25937

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 10 08 2320

DECISION AND JOURNAL ENTRY

Dated: June 13, 2012

CARR, Judge.

{¶1} Appellant, Billy Neal, appeals the judgment of the Summit County Court of Common Pleas denying his motion to suppress. This Court affirms.

I.

{¶2} This case arises out of the inventory search and impoundment of Billy Neal's pickup truck after he was arrested on August 17, 2010.

{¶3} On September 1, 2010, the Summit County Grand Jury indicted Neal on one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree; and one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. Neal pleaded not guilty to the charges at arraignment. On September 21, 2010, Neal filed a motion to suppress the evidence discovered during the search of his truck on the basis that it was not a valid inventory search. The State responded on September 24, 2010. On October 15, 2010, Neal filed an amended motion to

suppress. After a hearing on December 7, 2010, the trial court issued an order denying the motion on December 22, 2010.

{¶4} The matter proceeded to jury trial and Neal was convicted of both counts in the indictment. The trial court found that the counts merged and sentenced Neal to a one-year prison term, which was suspended on the condition that he complete two years of community control. Neal has timely appealed to this Court, raising one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY DENYING HIS MOTION TO SUPPRESS, THEREFORE, APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND [THE] FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED.

{¶5} In his sole assignment of error, Neal argues that the trial court erred in denying his motion to suppress. This Court disagrees.

{¶6} The Supreme Court of Ohio has held:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions ad evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶7} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. The United States Supreme Court has outlined several exceptions to the Fourth Amendment's warrant requirement, including an inventory search.

*Colorado v. Bertine*, 479 U.S. 367, 371 (1987). In *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976), the United States Supreme Court recognized the constitutional validity of police inventory searches of lawfully impounded automobiles, "where the process is aimed at securing or protecting the car and its contents." "In the interests of public safety an as part of what the Court has called 'community caretaking functions,' * * * automobiles are frequently taken into police custody." *Id.* at 368.

> [A] routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile.

*State v. Robinson*, 58 Ohio St.2d 478, 480 (1979). "To determine if an inventory search is valid, the court must first determine whether the police lawfully impounded the vehicle. A vehicle can be lawfully impounded when the occupant of the vehicle is arrested." *State v. Robinson*, 9th Dist. No. 19905, 2000 WL 1587007 (Oct. 25, 2000), citing *State v. Taylor*, 114 Ohio App.3d 416, 422 (2d Dist. 1996). This Court has rejected a challenge to the impoundment of a vehicle when there was no evidence of a pretextual motive and the impoundment was conducted pursuant to standard police procedure. *State v. Wilson*, 9th Dist. No. 2624-M, 1997 WL 416408 (June 23, 1997).

{¶8}     When a vehicle is lawfully impounded, the validity of the inventory search then must be examined. "The justification for inventory searches stems from three administrative caretaking functions: (1) protecting an individual's property while it is in police custody; (2) protecting the police from claims of lost, stolen, or vandalized property; and (3) protecting the police from danger." *Robinson*, 2000 WL 1587007, at 2. "[I]nventories pursuant to standard police procedures are reasonable." *Opperman*, 428 U.S. at 372. Furthermore, a police

department need not have a written policy or practice for inventorying a vehicle. *State v. Biancardi*, 9th Dist. No. 97CA006820, 1999 WL 66198 (Feb. 9, 1999). It is sufficient that some "established routine" exists, and the State can produce evidence of it through testimony. *Id.*

{¶9} In ruling on the motion to suppress, the trial court found that Deputy Brown's decision to inventory and tow Neal's pickup truck subsequent to his arrest was lawful because the truck had been abandoned, and was parked at an angle in a private lot. The trial court reached this decision on the basis that Deputy Brown acted pursuant to the Summit County Sheriff's policy which requires a vehicle to be towed when it is part of an accident, is unsafe, is a traffic hazard, or pursuant to arrest and abandonment.

{¶10} On appeal, Neal argues that law enforcement unlawfully seized his vehicle and performed an inventory search because it had not been involved in a crime or traffic violation, and had not been abandoned. Neal argues that the circumstances of this case are analogous to the facts of *State v. Cole*, 93 Ohio App.3d 712 (9th Dist.1994), wherein this Court concluded that a defendant's vehicle was unlawfully impounded when the officer testified that he conducted an inventory search whenever someone was placed under arrest, and the testimony failed to establish the existence of any valid or standard criteria for determining when a car should be impounded.

{¶11} Deputy Larry Brown, who has 11 years of experience in the patrol division of the Summit County Sheriff's Department, was the only witness to testify at the suppression hearing. On the afternoon of August 17, 2010, Deputy Brown responded to a traffic accident at the intersection of Arlington and Krumroy Roads in Coventry, Ohio. After Deputy Brown cleared the intersection, he pulled his cruiser into the parking lot of Chip's Pizza so that he could complete his accident report. As Deputy Brown had just cleared the intersection, he was not

parked in a parking spot. Deputy Brown testified that as he sat in his cruiser writing his report, "[Neal] pulled in kind of at an angle behind my cruiser." Neal then exited his pickup truck, approached Deputy Brown's cruiser, and knocked on the window. When Deputy Brown rolled down his window, Neal stated that he was from South Carolina and was looking for his wife. Neal proceeded to ask if his wife had filed for a protection order against him. Deputy Brown advised Neal that he would need Neal's social security number in order to access that information. Neal promptly disclosed his social security number, and Deputy Brown sent a radio request for a search in the LEADS database. The search revealed that while Neal did not have a protection order against him, there was an active arrest warrant for Neal out of the Akron Municipal Court.

{¶12} In light of the warrant, Deputy Brown advised Neal that he was under arrest, placed him in handcuffs, and placed him in the back of the cruiser. Deputy Brown testified that the Summit County Sheriff's Department has a policy for handling abandoned vehicles at the scene of an arrest. According to Deputy Brown, the vehicle is either towed or turned over to a designated individual at the request of the arrestee. This policy is aimed at protecting the vehicle itself from being stolen and ensuring that the personal property inside the vehicle is not stolen or damaged. Deputy Brown indicated that the sheriff's department could be held responsible if anything happened to the vehicle. Deputy Brown testified that after the decision is made to tow a vehicle, it is necessary to do an inventory search. Deputy Brown continued that an inventory search "consists of basically a plain view search of the vehicle for any valuables. I always ask the person if they have anything that needs to be documented or anything that can be taken with them. It protects the sheriff's office again from accusations of theft or it protects the towing company from accusations of theft." Deputy Brown testified that the inventory search protects

both the sheriff's department as well as the tow company against claims of theft. The State introduced copies of the Summit County Sheriff's policies for both vehicle tow reports and inventory searches as exhibits at the hearing. When asked if the policy calls for the vehicle to be towed in every situation where a suspect is arrested, Deputy Brown testified, "No, it does not." Deputy Brown further testified that he has worked cases where an arrest was made and it was unnecessary to either tow the vehicle or turn it over to a designated individual. When asked why it was necessary to tow the vehicle in this particular case, Deputy Brown testified, "The vehicle was going to be abandoned there. I cannot arrest a person and take them from the vehicle and leave their vehicle abandoned."

{¶13} In regard to the location of the vehicle, Deputy Brown testified that Neal's pickup truck, a Ford F-150, was "parked catty-corner in Chip's parking lot." Deputy Brown asked Neal if he had anyone who could come to retrieve his truck. When Neal answered in the negative, Deputy Brown ordered that the vehicle be towed for safekeeping. Neal further indicated that there were no valuables in the pickup truck that needed to be documented. Deputy Brown emphasized that he was not investigating Neal for any type of crime and that Neal was not a suspect in any ongoing investigations in which Deputy Brown was involved.

{¶14} On cross-examination, Deputy Brown testified that the parking lot at Chip's Pizza is a privately owned and open for commercial business. Deputy Brown testified that a vehicle will be towed pursuant to the Sheriff's policy if an arrest is made and the vehicle is considered abandoned or would be a traffic hazard. Deputy Brown clarified that providing the arrestee with the option to turn the vehicle over to a third party was not part of the written policy, but instead was extended as a matter of courtesy. When asked if Deputy Brown had Neal's truck towed because it was abandoned or simply because Neal had been arrested, Deputy Brown testified,

"technically, by arresting him and taking him away it would make the vehicle abandoned, so I guess you can make two factors. But, technically, I towed the vehicle because Mr. Neal was arrested." Deputy Brown further testified that Neal's vehicle was "blocking the driveway of a business so it [had] to be towed." Deputy Brown continued that he was "not going to arrest him and leave an F-150 blocking private property." When asked if the vehicle was parked legally in a parking spot, Deputy Brown responded, "it wasn't parked in a parking spot." Deputy Brown conducted the inventory search of Neal's truck prior to the arrival of the tow truck. During the inventory of the vehicle, Deputy Brown discovered two loaded 9-millimeter handguns in the center console. On re-direct examination, Deputy Brown clarified that his search of the vehicle was an inventory search, and not a search incident to arrest.

{¶15} Based upon the foregoing, the trial court properly denied Neal's motion to suppress. By arranging for Neal's truck to be towed, Deputy Brown acted in accordance with a standardized, routine tow policy maintained by the Summit County Sheriff's Department. Deputy Brown testified that while the policy does not require a vehicle to be impounded and inventoried subsequent to every arrest; it does call for a vehicle to be towed when it is abandoned or could be a traffic hazard. Here, Neal's truck was parked at an angle, or catty-cornered, in the parking lot of Chip's Pizza, a private commercial lot. Deputy Brown testified that the truck was not in a parking space and that he did not want to leave "an F-150 blocking private property." Deputy Brown made a good faith effort to have Neal turn the vehicle over to a third party, but Neal was unable to do so. The decision to impound and inventory the vehicle was not pretextual in nature as Deputy Brown testified that Neal was not the subject of an investigation and the decision to tow his vehicle had no relation to a suspicion of criminal activity. Unlike the circumstances in *Cole*, this case does not involve a scenario where the arresting officer lacked a

valid reason to tow the vehicle, and acted pursuant to a policy mandating that all vehicles be towed subsequent to an arrest. Instead, Deputy Brown had Neal's truck towed because it had been abandoned and was blocking the driveway of a business. Thus, as the trial court properly denied Neal's motion to suppress, his assignment of error is overruled.

## III.

{¶16} Neal's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.


APPEARANCES:

CHRISTOPHER R. SNYDER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.