[Cite as *State v. Patterson*, 2021-Ohio-4617.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

  Plaintiff-Appellee,

- v -

JAMES F. PATTERSON,

  Defendant-Appellant.

CASE NO. 2021-L-062

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 001052

**O P I N I O N**

Decided: December 30, 2021
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender; *Melissa A. Blake* and *Jamie R. Eck*, Assistant Public Defenders, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1} Appellant, James F. Patterson ("Mr. Patterson"), appeals the judgments of the Lake County Court of Common Pleas denying his motion to suppress and imposing an indefinite prison term of three to four and one-half years following Mr. Patterson's no contest plea to aggravated possession of drugs.

{¶2} Mr. Patterson asserts six assignments of error, which we review out of order and, at times, collectively.

{¶3} In his sixth assignment of error, Mr. Patterson contends that the trial court erred in denying his motion to suppress evidence discovered during an "unlawful" inventory search of his vehicle. In his first through fifth assignments of error, Mr. Patterson challenges the constitutionality of the Reagan Tokes Act, which is the indefinite sentencing scheme under which he was sentenced.

{¶4} After a careful review of the record and pertinent law, we find as follows:

{¶5} (1) There is no basis to conclude that the inventory search of Mr. Patterson's vehicle was unlawful. Mr. Patterson has not asserted that law enforcement administered its vehicle impoundment policy in bad faith or that its actions were a mere pretext for an evidentiary search. In addition, an inventory search is an administrative caretaking that is not subject to the same requirements as a protective search for weapons.

{¶6} (2) Pursuant to this court's precedent, constitutional challenges to the Reagan Tokes Act are not yet ripe for review.

{¶7} Thus, we affirm the judgments of the Lake County Court of Common Pleas.

**Substantive and Procedural History**

{¶8} The underlying case arose following a traffic stop in Painesville Township on the evening of October 5, 2020.

{¶9} Sergeant Zachary Ropos ("Sgt. Ropos") of the Lake County Sheriff's Office ("LCSO") was situated in his marked patrol car near the intersection of Fairport Nursery Road and Mantle Road with his headlights shining onto the roadway. According to Sgt. Ropos, the area had experienced a high rate of crime, including an influx of stolen vehicles. Specifically, car thieves were stealing temporary tags and placing them in obscure locations on the stolen vehicles.

2

{¶10} At about 10:45 p.m., Sgt. Ropos observed Mr. Patterson drive past in a white Pontiac Grand Prix with no visible rear registration. Sgt. Ropos followed Mr. Patterson's vehicle and still did not see a registration. Sgt. Ropos initiated a traffic stop, and Mr. Patterson pulled over. Sgt. Ropos approached the vehicle and advised Mr. Patterson of the reason for the stop. Mr. Patterson told Sgt. Ropos that he was the registered owner of the vehicle and that there was a temporary tag in the upper left corner of the rear windshield. Sgt. Ropos looked in that location and finally observed the temporary tag.

{¶11} Sgt. Ropos ran the vehicle's registration through central dispatch and asked Mr. Patterson for his driver's license. Mr. Patterson provided him with his Ohio identification card. While waiting for dispatch to respond, Mr. Patterson informed Sgt. Ropos that he had recently been released from prison. Dispatch advised Sgt. Ropos that Mr. Patterson was the registered vehicle owner and that he had a suspended driver's status. Sgt. Ropos asked Mr. Patterson to step out of the vehicle and escorted him to the rear of the patrol car to issue him a citation.

{¶12} The LCSO's written policies and procedures state that vehicle impoundment is necessary "[w]hen State laws dictate impoundment of vehicles such as driving under the influence laws and driving under suspension law." Sgt. Ropos determined that it was necessary to tow Mr. Patterson's vehicle because Mr. Patterson was the sole occupant, he did not have a valid license, and the vehicle was stopped on a traveled roadway. After calling the tow truck, Sgt. Rose conducted an inventory search of the vehicle and completed a vehicle inventory sheet.

Case No. 2021-L-062

{¶13} While inside the patrol car, Mr. Patterson communicated with someone via FaceTime. At some point, Mr. Patterson told Sgt. Ropos that someone could retrieve his vehicle. According to Sgt. Ropos, the LCSO will permit another driver to retrieve a vehicle under certain circumstances. However, Sgt. Ropos declined to do so in this instance because the tow truck had already been summoned and because he did not want to prolong the stop to wait for two vehicle operators to arrive (i.e., one to arrive to the scene and another to remove Mr. Patterson's vehicle).

{¶14} During his inventory search of the vehicle, Sgt. Ropos found drugs inside a large plastic bag in the driver's side door compartment.

### Indictment

{¶15} The Lake County Grand Jury indicted Mr. Patterson for the following offenses: aggravated possession of drugs, a felony of the second degree, in violation of R.C. 2925.11 (count 1); aggravated trafficking in drugs, a felony of the second degree, in violation of R.C. 2925.03(A)(2); and operating a motor vehicle without a valid license, an unclassified misdemeanor, in violation of R.C. 4510.12(A) (count 2). Counts 1 and 2 included contraband and instrumentality forfeiture specifications pursuant to R.C. 2941.1417 and R.C. 2981.04.

{¶16} Mr. Patterson waived his right to be present at his arraignment, and the trial court entered pleas of not guilty on his behalf.

### Motion to Suppress

{¶17} Mr. Patterson filed a motion to suppress the evidence obtained by the LCSO from his vehicle, challenging the constitutionality of the traffic stop, his continued detention, and the search. The state filed a response opposing Mr. Patterson's motion.

4

{¶18} The trial court held a hearing at which it heard evidence and argument from counsel. The state presented testimony from Sgt. Ropos and introduced exhibits consisting of ariel photographs of the street intersection, photographs of the exterior of a similar vehicle, Sgt. Ropos's vehicle inventory sheet, and the LCSO's motor vehicle impoundment policies and procedures. The trial court subsequently filed an opinion and journal entry denying Mr. Patterson's motion to suppress.

### No Contest Plea; Sentencing

{¶19} Mr. Patterson subsequently withdrew his plea of not guilty to count 1 (aggravated possession of drugs) and its related forfeiture specification and entered written and oral pleas of no contest. The state agreed to dismiss the remaining count of the indictment, and the parties agreed to jointly recommend a prison sentence of three years. Mr. Patterson reserved the right to challenge the constitutionality of the trial court's imposition of an indefinite prison term pursuant to the Reagan Tokes Act.

{¶20} The trial court held a plea hearing, where it engaged in a plea colloquy with Mr. Patterson pursuant to Crim.R. 11, accepted his no contest plea to count 1 and the related specification, and found him guilty. Mr. Patterson waived a presentence investigation, and the matter proceeded to sentencing the next day.

{¶21} At the sentencing hearing, defense counsel objected to the Reagan Tokes Act and argued that it is unconstitutional on several bases. The trial court found that the law is constitutional and overruled defense counsel's objection. The trial court sentenced Mr. Patterson to an indefinite prison term of a minimum term of three years and a maximum term of four-and-a-half years.

5

{¶22} Mr. Patterson appealed the trial court's judgment entry denying his motion to suppress and the sentencing entry. He asserts the following six assignments of error:

{¶23} "[1.] The defendant-appellant's constitutional challenges to the indeterminate prison sentence of three to four and a half years that was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, are ripe for review.

{¶24} "[2.] The defendant-appellant's indeterminate prison sentence of three to four and a half years that was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, must be reversed as the Reagan Tokes Act is unconstitutionally void for vagueness.

{¶25} "[3.] The defendant-appellant's indeterminate prison sentence of three to four and a half years that was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, must be reversed as the Reagan Tokes Act unconstitutionally violates the doctrine of separation of powers.

{¶26} "[4.] The defendant-appellant's indeterminate prison sentence of three to four and a half years that was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, violates his constitutional right to trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 5 of the Ohio Constitution.

{¶27} "[5.] The defendant-appellant's indeterminate prison sentence of three to four and a half years that was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, violates his constitutional rights to fair trial and due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5 & 10 of the Ohio Constitution.

6

Case No. 2021-L-062

{¶28} "[6.] The trial court erred by denying the defendant-appellant's motion to suppress in violation of his due process rights and rights against unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution."

{¶29} We address Mr. Patterson's assignments of error out of order and, at times, collectively, for ease of discussion.

## Motion to Suppress

{¶30} In his sixth assignment of error, Mr. Patterson contends that the trial court erred by denying his motion to suppress. On appeal, Mr. Patterson asserts that the inventory search of his vehicle was "unlawful."

### *Standard of Review*

{¶31} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* On appeal, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

### *Legal Standards*

{¶32} The United States and Ohio Constitutions prohibit unreasonable searches and seizures. Fourth Amendment to the U.S. Constitution; Ohio Constitution, Article I,

7

Section 14. Generally, for a search or seizure to be reasonable, it must be based upon probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v.* Moore, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000).

{¶33} The warrant requirement is subject to "'a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), quoting *Katz* at 357. An inventory search is one of these exceptions. *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *State v. Hathman*, 65 Ohio St.3d 403, 405, 604 N.E.2d 743 (1992).

{¶34} There are two portions of an inventory search: (1) the impoundment of the vehicle and (2) the inventory of the items therein. *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 31. Vehicles are frequently taken into police custody in the interests of public safety as part of the community-caretaking functions of police. *South Dakota v. Opperman*, 428 U.S. 364, 368-369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 20. Examples include vehicles that have been in accidents; violate parking ordinances; are stolen or abandoned; and cannot be lawfully driven. *Leak* at ¶ 20. According to the Supreme Court of the United States, "[t]he authority of police to seize and remove from the street vehicles that impede traffic or threaten public safety and convenience is beyond challenge." *Opperman* at 369; *see Leak* at ¶ 20.

{¶35} When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. *Opperman* at 369. These procedures developed in response to three distinct needs: (1) the protection

8

of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger. *Id.*; *Hathman* at 405-406. In addition, an inventory search need not occur at the impound lot but instead can occur on scene. *Perry* at ¶ 31.

{¶36} Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the warrant requirement, including the standard of probable cause, are not implicated. *Opperman* at 370, fn. 5; *Hathman* at 406. Rather, their validity is judged by the Fourth Amendment's standard of "reasonableness." *Opperman* at 370; *Hathman* at 406.

{¶37} The Supreme Court of Ohio has held that "a routine inventory search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 11.

### Analysis

{¶38} Mr. Patterson first challenges the tow of his vehicle. According to Mr. Patterson, Sgt. Ropos testified that an alternative in this type of situation was to allow a designated person to pick up the vehicle. Mr. Patterson asked to have someone pick up the vehicle, but Sgt. Ropos refused. Had Sgt. Ropos allowed the vehicle to be picked up instead of calling for a tow, the vehicle would not have been the subject of the inventory search.

9

{¶39} Mr. Patterson's characterization of the testimony is not entirely inaccurate. Sgt. Ropos testified that the LCSO will permit another driver to retrieve a vehicle under circumstances. While Mr. Patterson eventually asked if someone could retrieve his vehicle, Sgt. Ropos testified that he did so "[a]s the tow truck was arriving on scene" and that the LCSO will not cancel the tow under such circumstances. Sgt. Ropos also did not want to prolong the stop to wait for two vehicle operators to arrive.

{¶40} While Sgt. Ropos admittedly did not give Mr. Patterson an opportunity to contact someone prior to ordering the tow, this is not constitutionally required. Even if it had been possible for police to give a defendant an opportunity to make alternative arrangements for a vehicle, "'the real question is not what "could have been achieved," but whether the Fourth Amendment requires such steps. * * * The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.'" *Bertine* at 374, quoting *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *see Blue Ash* at ¶ 19. Instead, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine* at 374; *see Perry* at ¶ 47-48.

{¶41} Mr. Patterson has not asserted that Sgt. Ropos administered the LCSO's written impoundment policy in bad faith or that Sgt. Ropos's actions were a mere pretext for an evidentiary search. Thus, there is no basis to conclude that the tow of Mr. Patterson's vehicle was unlawful.

Case No. 2021-L-062

{¶42} Mr. Patterson next contends that Sgt. Ropos lacked "reasonable suspicion" or "specific and articulable facts" upon which to base a "warrantless search" of his vehicle. He notes that there was no testimony indicating that he was engaged in criminal activity beyond driving without a valid license or that he posed a threat to officer safety.

{¶43} Mr. Patterson's argument is based on case law regarding a *protective search* of a vehicle following an investigative stop. *See, e.g., State v. Bobo*, 37 Ohio St.3d 177, 181, 524 N.E.2d 489 (1988) ("[A] police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others"). Sgt. Ropos's search of Mr. Patterson's vehicle was an *inventory search*, which is an administrative caretaking function that is not subject to these requirements. Thus, there is no basis to conclude that the search of Mr. Patterson's vehicle was unlawful.

{¶44} Mr. Patterson's sixth assignment of error is without merit.

### Reagan Tokes Act

{¶45} We collectively address Mr. Patterson's first through fifth assignments of error, which involve the constitutionality of the Reagan Tokes Act.

{¶46} In his first assignment of error, Mr. Patterson contends that his constitutional challenges to the Reagan Tokes Act are ripe for review. In his second through fifth assignments of error, he contends, respectively, that the Reagan Tokes Act is void for vagueness; violates the doctrine of separation of powers; violates his right to trial by jury; and violates his rights to a fair trial and due process.

{¶47} This court has previously described the relevant portions of the Reagan Tokes Act, as follows:

11

Case No. 2021-L-062

{¶48} "The Reagan Tokes Act went into effect in Ohio on March 22, 2019. The Act requires a sentencing court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a), on or after the effective date, to order a minimum prison term under that provision and a maximum prison term as determined by R.C. 2929.144(B). The Act also sets forth a presumption that an offender 'shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.' R.C. 2967.271(B). The offender's presumptive earned early release date is determined under R.C. 2967.271(F), which permits the sentencing court to reduce the minimum term under certain circumstances. R.C. 2967.271(A)(2). The Department of Rehabilitation and Corrections ("DRC") may rebut the R.C. 2967.271(B) presumption if it determines at a hearing that certain statutorily enumerated factors apply. R.C. 2967.271(C). If the DRC rebuts the presumption, it may maintain the offender's incarceration after the expiration of the minimum prison term or presumptive earned early release date for a reasonable period of time, which 'shall not exceed the offender's maximum prison term.' R.C. 2967.271(D)(1)." *State v. Ferguson*, 11th Dist. Lake No. 2020-L-031, 2020-Ohio-5578, ¶ 8, *appeal accepted*, 162 Ohio St.3d 1410, 2021-Ohio-961, 165 N.E.3d 333.

{¶49} In *State v. Lavean*, 11th Dist. Lake No. 2020-L-045, 2021-Ohio-1456, we concluded, in accordance with several of our sister districts, that constitutional challenges to the Reagan Tokes Act on appeal from sentencing are not yet ripe for review because it is uncertain whether the offender's release date will extend past the minimum term of imprisonment imposed. *Id.* at ¶ 8-12.

12

Case No. 2021-L-062

{¶50} We have continued to apply this determination in subsequent cases. *See, e.g., State v. Moran*, 11th Dist. Lake Nos. 2020-L-114 through 2020-L-117, 2021-Ohio-1987, ¶ 13, *conflict certified*, 164 Ohio St.3d 1440, 2021-Ohio-3233, 173 N.E.3d 1227, *appeal accepted*, 164 Ohio St.3d 1440, 2021-Ohio-3233, 173 N.E.3d 1230; *State v. Woods*, 11th Dist. Lake No. 2021-L-044, 2021-Ohio-3173, ¶ 14, *appeal accepted*, *12/22/2021 Case Announcements*, 2021-Ohio-4409; *State v. Joyce*, 11th Dist. Lake No. 2021-L-006, 2021-Ohio-3476, ¶ 9.

{¶51} In addition, the question of whether the Reagan Tokes Law is ripe for review is currently pending before the Supreme Court of Ohio. *See State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150.

{¶52} Thus, in accordance with this court's precedent, we conclude that Mr. Patterson's first assignment of error lacks merit and that his second through fifth assignments of error are not yet ripe for review.

{¶53} For the foregoing reasons, the judgments of the Lake County Court of Common Pleas are affirmed.

CYNTHIA WESTCOTT RICE, J.,

JOHN J. EKLUND, J.,

concur.