[Cite as *State v. Nixon*, 2023-Ohio-3457.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 30403 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHARLES NIXON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 21 11 4166 |

DECISION AND JOURNAL ENTRY

Dated: September 27, 2023

FLAGG LANZINGER, Judge.

{¶1}   Charles Nixon appeals from the judgment of the Summit County Court of Common Pleas, denying his motion to suppress. For the following reasons, this Court affirms.

I.

{¶2}   A grand jury indicted Mr. Nixon on charges for improperly handling a firearm in a motor vehicle (with a forfeiture specification) and failure to comply with an order or signal of a police officer. The charges stemmed from a traffic stop wherein officers from the Akron Police Department ("APD") arrested Mr. Nixon and located a loaded firearm under the driver's seat of the vehicle Mr. Nixon was driving.

{¶3}   Mr. Nixon pleaded not guilty and moved to suppress the evidence obtained during the traffic stop. In his motion to suppress, Mr. Nixon argued that the officers lacked reasonable suspicion to initiate a traffic stop and that the officers lacked probable cause to arrest him. The matter proceeded to a suppression hearing wherein the following testimony was adduced.

{¶4} According to the testimony of one of the arresting officers, he and his partner observed a vehicle with heavily tinted windows fail to use a turn signal while executing a turn. The officer testified that the officers attempted to initiate a traffic stop by activating the police cruiser's sirens and overhead lights. When the vehicle came to a stop at a stop sign, the officer exited the police cruiser and started to walk toward the vehicle. According to the officer, the driver of the vehicle then yelled out of the driver's side window that he was not going to stop. The driver then pulled away from the stop sign and continued to drive through a residential neighborhood at a relatively low rate of speed. The officer quickly returned to the police cruiser and the officers followed the vehicle for about thirty seconds until the vehicle pulled into a driveway. The officers then exited the police cruiser, approached the vehicle, and arrested the driver: Mr. Nixon.

{¶5} The officers confirmed through their in-cruiser LEADS data terminal and through a radio call to the LEADS operator that Mr. Nixon was not the owner of the vehicle, and that Mr. Nixon had a suspended driver's license. After the officers arrested Mr. Nixon and secured him in the back seat of the police cruiser, the officers conducted a tow inventory search of the vehicle pursuant to the APD's "Vehicle Impoundment and Inventory Procedure" policy ("Inventory Policy"). The trial court admitted the Inventory Policy as an exhibit during the suppression hearing. The Inventory Policy provides, in relevant part, that officers should tow a vehicle if the driver has a suspended driver's license. The Inventory Policy also provides that the officers must conduct an inventory for all impounded vehicles and complete a "Tow Report[.]"

{¶6} The officer testified that the officers conducted the inventory search in compliance with the APD's Inventory Policy. During the course of the search, the officers located a loaded firearm under the driver's seat of the vehicle. The officer acknowledged that the firearm was not subsequently noted on the Tow Report but testified that it was documented in three places: the

police report, the supplemental report, and the evidence report. The officer testified that this documentation satisfied the APD's policies. The officer also acknowledged that they did not call for a tow truck until after the search occurred. He testified, however, that there is no specific timeframe regarding when officers are required to call for a tow truck.

{¶7} Mr. Nixon testified on his own behalf. According to him, he continued driving the vehicle after the police attempted to conduct the initial traffic stop because he wanted to stop in a well-lit location, which was his driveway a few blocks away. Mr. Nixon also testified that his driver's license was not suspended at the time of the incident.

{¶8} After the suppression hearing, the trial court denied Mr. Nixon's motion to suppress. In doing so, the trial court concluded that the officers had reasonable suspicion to initiate a traffic stop. In support of this conclusion, the trial court cited the fact that the officer testified that he and his partner observed the vehicle Mr. Nixon's was driving turn without signaling, and then continued driving after the officers activated their sirens and overhead lights. The trial court also concluded that the tow inventory search was permissible and valid because the officers conducted it after properly impounding the vehicle and arresting Mr. Nixon.

{¶9} After the trial court's ruling on his motion to suppress, Mr. Nixon pleaded no contest. The trial court then found Mr. Nixon guilty of the charged offenses and sentenced him to community control. Mr. Nixon now appeals, assigning as error that the trial court erred by denying his motion to suppress.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

{¶10} In his sole assignment of error, Mr. Nixon argues that the trial court erred by denying his motion to suppress. For the following reasons, this Court disagrees.

{¶11} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶12} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "Subject to specific exceptions, which the State has the burden of establishing, warrantless searches are unreasonable per se under the Fourth Amendment." *State v. Atkinson*, 9th Dist. Lorain No. 19CA011481, 2020-Ohio-3522, ¶ 13, citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 98.

{¶13} As the Ohio Supreme Court has acknowledged, "[t]he inventory-search exception is a well-defined exception to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 20, citing *Illinois v. Lafayette*, 462 U.S. 640, 643

(1983). "[A] routine inventory search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, ¶ 11, citing *South Dakota v. Opperman*, 428 U.S. 364 (1976).

{¶14} "To determine if an inventory search is valid, the court must first determine whether the police lawfully impounded the vehicle. A vehicle can be lawfully impounded when the occupant of the vehicle is arrested." *State v. Neal*, 9th Dist. Summit No. 25937, 2012-Ohio-2609, ¶ 7, quoting *State v. Robinson*, 9th Dist. Summit No. 19905, 2000 WL 1587007, *3 (Oct. 25, 2000). Next, a court must determine "whether the impoundment was merely a pretext for an evidentiary search of the impounded vehicle." *Kavanagh* at ¶ 12. "This Court has rejected a challenge to the impoundment of a vehicle when there was no evidence of a pretextual motive and the impoundment was conducted pursuant to standard police procedure." *Neal* at ¶ 7. As this Court has explained:

> When a vehicle is lawfully impounded, the validity of the inventory search then must be examined. "The justification for inventory searches stems from three administrative caretaking functions: (1) protecting an individual's property while it is in police custody; (2) protecting the police from claims of lost, stolen, or vandalized property; and (3) protecting the police from danger." * * * "[I]nventories pursuant to standard police procedures are reasonable." * * * Furthermore, a police department need not have a written policy or practice for inventorying a vehicle. * * * It is sufficient that some "established routine" exists, and the State can produce evidence of it through testimony.

*Id.* at ¶ 8

{¶15} On appeal, Mr. Nixon has not argued that the officers lacked reasonable suspicion to initiate a traffic stop, or that they lacked probable cause to arrest him. Instead, Mr. Nixon argues that the tow inventory search was pretextual and, therefore, unreasonable under the Fourth

Amendment. In support of his argument, Mr. Nixon points to the fact that the Tow Report did not list the firearm, which was required under the APD's Inventory Policy. Mr. Nixon also points to the fact that the officers did not call for a tow truck until after they conducted the search. Mr. Nixon further points to the fact that the underlying incident involved him driving for a short period of time and parking in his own driveway. Mr. Nixon concludes that there was no legitimate need to tow the vehicle, and that the officers' reliance upon a tow inventory search was a pretext for conducting an illegal, warrantless search.

{¶16} Despite Mr. Nixon's arguments to the contrary, competent, credible evidence supported the trial court's findings of fact. *Burnside*, 2003-Ohio-5372, at ¶ 8. Accepting these facts as true, this Court concludes that the facts satisfied the applicable legal standard. *Id.* Here, the vehicle was lawfully impounded because the officers arrested Mr. Nixon for failure to comply. *See Neal*, 2012-Ohio-2609, at ¶ 7. Additionally, the officer testified that Mr. Nixon's license was suspended. Thus, under the APD's Inventory Policy, the officers were permitted to tow the vehicle and were required to conduct an inventory search. While the firearm was not listed on the Tow Report, the officer testified that it was documented on the police report, the supplemental report, and the evidence report. According to the officer, this satisfied the APD's policies. Additionally, the officer testified that there is no specific timeframe regarding when officers are required to call for a tow truck.

{¶17} Having reviewed the record, this Court concludes that the trial court did not err when it denied Mr. Nixon's motion to suppress. The inventory search conducted in this case was not unreasonable within the meaning of the Fourth Amendment because it was performed pursuant to standard police practice, and the evidence did not demonstrate that the procedure involved was merely a pretext for an evidentiary search of the impounded vehicle. *See Kavanagh*, 2007-Ohio-

1103, at ¶ 11; *Neal*, 2012-Ohio-2609, at ¶ 7; *Robinson*, 2000 WL 1587007, at *3. Mr. Nixon's sole assignment of error is overruled.

III.

**{¶18}** Mr. Nixon's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶19} I respectfully dissent as I would conclude that the trial court erred in denying Nixon's motion to suppress because the evidence presented at the suppression hearing indicated that the purported need to inventory the vehicle driven by Nixon was merely a pretext in order to justify a more invasive probe for contraband.

{¶20} A suppression challenge to the legitimacy of an inventory search will turn on whether there was evidence of a pretextual motive on the part of police and, further, whether the impoundment of the vehicle was conducted pursuant to standard police procedure. *See State v. Neal*, 9th Dist. Summit No. 25937, 2012-Ohio-2609, ¶ 7. The officer who testified at the suppression hearing indicated that the "administrative side" of the arrest involved conducting an inventory search of the vehicle Nixon was driving. The officer suggested that the search was conducted pursuant to the Akron Police Department's Inventory Policy with the aim producing a tow report.

{¶21} As noted by the majority, the firearm recovered from the vehicle was never included in the tow report. Perhaps more troubling, a review of the body camera footage admitted at the suppression hearing suggests that the scope of the search went well beyond merely conducting an inventory of the vehicle. Almost immediately after placing Nixon in the cruiser, four police officers began searching the vehicle. None of the officers had clipboards or notepads to record the items that were subject to the inventory. Before long, a different officer opened the trunk of the vehicle and immediately pulled up the carpet to search for items that might be concealed. During the course of the search, the officers appeared to disregard items that would typically be subject to inventory while they searched for other items. Under these circumstances,

I would conclude that the strong evidence of a pretextual motive invalidated the legality of the inventory search.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.